IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE HANOVER INSURANCE COMPANY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No. 2:25-cv-06284 |
| | : | |
| v. | : | |
| | : | |
| JEFFREY LYNCH, | : | |
| | : | |
| Defendant. | : | |

**Perez, J.**                                                                                    **July 20, 2026**

**MEMORANDUM**

This case involves a declaratory judgment action brought by Plaintiff The Hanover Insurance Company ("Hanover") against Defendant Jeffrey Lynch ("Lynch"). Hanover seeks declaration that it has no duty to defend or indemnify Lynch in the underlying civil litigation ("the Underlying Action") between Lynch and James Boruch ("Boruch"). Compl., ECF No. 1. Before the Court is Hanover's Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). ECF No. 14. For the reasons discussed below, the Court denies Hanover's motion without prejudice.

**I.        Procedural History**

On November 5, 2025, Hanover initiated this action by filing a Complaint for Declaratory Judgment. ECF No. 1. Hanover served Lynch with process on November 17, 2025. ECF No. 9. Lynch did not answer or otherwise respond to the Complaint. On January 7, 2026, Hanover requested default against Lynch, which the Clerk entered on January 9, 2026. ECF Nos. 10 & 13. On February 24, 2026, Hanover moved for default judgment against Lynch. ECF No. 14.

1

II.        **Factual Background**

Hanover is an insurance company incorporated in New Hampshire with its principal place of business in Worcester, Massachusetts. ECF No. 1 ¶ 3. Lynch is an adult individual residing in Coatesville, Pennsylvania. *Id.* ¶ 4. Hanover issued a Personal Automobile Policy ("the Policy") to Lynch for the effective period of August 13, 2023, to August 13, 2024. Auto Policy, ECF No. 1-3 at 15. The Policy states that Hanover will "pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." *Id.* at 51. The Policy excludes liability coverage for any insured for: 1) "intentionally caus[ing] 'bodily injury' or 'property damage'"; 2) any "'bodily injury' or 'property damage' arising out of a willful or malicious act or omission"; and 3) any "'bodily injury' or 'property damage' arising out of a criminal act, except for traffic violations." *Id.* at 39, 52.

On December 15, 2023, Lynch was involved in a motor vehicle crash with Boruch. ECF No. 1 ¶¶ 13-15. A Police Criminal Complaint was filed against Lynch regarding the collision, *id.* ¶ 12, and Lynch pled guilty to one count of Aggravated Assault by Vehicle. Sentencing Transcript, ECF No. 1-5. Boruch then filed the Underlying Action against Lynch in the Court of Common Pleas of Chester County. ECF No. 1-7. The Underlying Action charges Lynch with three counts: 1) negligence (Count I); 2) assault (Count II); and battery (Count III). ECF No. 1-7. The Underlying Action alleges that Lynch's vehicle "pulled in front of [Boruch] and suddenly stopped causing [Boruch] to strike the rear of [Lynch's] vehicle." *Id.* ¶ 5. Lynch then "placed his vehicle in reverse, causing his vehicle to come back at [Boruch]," causing Boruch to sustain "numerous injuries." *Id.* ¶¶ 6-7. The Underlying Action uses these factual allegations to support the negligence count, as well as the assault and battery counts. *Id.* ¶¶ 15, 18, 29.

2

Under the negligence count, the Underlying Action further alleges that Lynch:

a) Fail[ed] to have the vehicle he was operating under proper and adequate control;
b) Operat[ed] the vehicle in a careless manner so as to create a dangerous condition for others;
c) Operat[ed] the vehicle at a speed which was too fast for the conditions then and there existing; and
d) Fail[ed] to be attentive to the conditions around him, and in particular, the presence of the [Boruch] on a bicycle.

*Id.* ¶ 16.

Hanover is currently providing a defense for Lynch in the Underlying Action under a reservation of rights. ECF No. 1 ¶ 46.

### III.        Legal Standard

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default judgment. Rule 55(a) requires the clerk of court to enter default against a defendant who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Once the clerk of court enters default, the plaintiff can then "apply to the court for a default judgment." Fed. R. Civ. P. 55(b).

However, the Court is not obligated to enter default judgment. *Zurich Am. Ins. Co. v. Gutowski*, 644 F. Supp. 3d 123, 132 (E.D. Pa. 2022). As a threshold matter, the Court must first determine it has proper subject matter and personal jurisdiction, that the defendant was properly served, and that the complaint establishes a legitimate cause of action. *Id.* (citing *Jimenez v. Rosenbaum-Cunningham Inc.*, Civ. A. No. 07-1066, 2010 U.S. Dist. LEXIS 31664, 2010 WL 1303449, at *17-18 (E.D. Pa. Mar. 31, 2010); *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006)). Then, the Court must determine whether default judgment is appropriate by considering the three *Chamberlain* factors: "(1) prejudice to the plaintiff if default is denied, (2)

3

whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

### IV.        Declaratory Judgment Act

The Declaratory Judgment Act states that, in a case of "actual controversy within its jurisdiction," a court "*may* declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a) (emphasis added). Accordingly, a court may abstain from hearing a declaratory judgment action, even if the action is within the court's jurisdiction. *Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 196 (3d Cir. 2021). In determining whether to hear a declaratory judgment action, the Court must first determine it has proper subject matter jurisdiction. *See Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 281 n.4 (3d Cir. 2017). The Court then engages in a multi-factor test to evaluate the "usefulness of the declaratory judgment remedy, and the fitness of the case for [federal] resolution." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 138 (3d Cir. 2014) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995)) (internal quotations omitted).

The Court's exercise of jurisdiction over Hanover's declaratory judgment action is proper. The instant action is not parallel to the Underlying Action and the remaining *Reifer* factors do not provide sufficient reason to decline jurisdiction.

### 1.        The Court Has Proper Subject Matter Jurisdiction.

Hanover invokes diversity of citizenship jurisdiction as the basis for subject matter jurisdiction under 28 U.S.C. § 1332. ECF No. 1 ¶ 6. Diversity jurisdiction requires complete diversity of citizenship between the parties and the amount in controversy to exceed $75,000.

28 U.S.C. § 1332(a). For jurisdictional purposes, a corporation is a citizen of both its State of incorporation, and the State where it has its principal place of business. *Id.* § 1332(c)(1). Here, the parties are completely diverse. Hanover is a citizen of both New Hampshire and Massachusetts, as it is incorporated in New Hampshire and its principal place of business is in Massachusetts. ECF No. 1 ¶ 3. Lynch is a citizen of Pennsylvania. *Id.* ¶ 4.

For insurance coverage disputes, courts evaluate the amount in controversy by examining the value of the insurance policy and the damages alleged in the underlying case. *Zurich*, 644 F. Supp. 3d at 134 (finding that the amount in controversy exceeded $75,000, based on the $1 million value of the insurance policy and the allegations of severe injuries). Here, the Policy has a $250,000 coverage limit, per person, for "bodily injury." ECF No. 1-3 at 15. The Underlying Action alleges that Boruch suffered serious injuries, and the description of those injuries is sufficient to show that the amount in controversy in the Underlying Action exceeds $75,000. *See* ECF No. 1-7 ¶¶ 6-7. The Court therefore concludes that the amount of controversy in the instant action exceeds $75,000.

### 2. The Absence of a Parallel State Proceeding and the *Reifer* Factors Support the Court's Exercise of Jurisdiction.

To determine the usefulness of the declaratory judgment remedy, the Court first determines whether there is a "parallel state proceeding[][.]" *Reifer*, 751 F.3d at 144 (holding that the absence of a parallel state proceeding "militates significantly in favor of exercising jurisdiction.").

For proceedings to be parallel, the actions must involve "substantial similarity" in both the issues and parties involved. *Kelly*, 868 F.3d at 284. For example, in *Homesite Ins. Co. v. Neary*, the court concluded that the federal declaratory judgment action regarding insurance coverage and the pending state court tort action regarding the insured's liability were not parallel proceedings.

Civ. A. No. 17-2297, 2017 U.S. Dist. LEXIS 184990, at *8 (E.D. Pa. Nov. 8, 2017). First, the court underlined the discrepancies in the parties involved; the insurer who brought the federal action was not a party to the state court civil action. *Id.* Second, the court held that questions of whether an insurance policy covered an insured's potential liability, and whether the insured was in fact liable, were distinct issues. *Id.* Accordingly, the court concluded that there was "no substantial similarity" between the two actions. *Id.*

After performing the parallel proceeding analysis, the Court then balances the *Reifer* factors to determine whether the declaratory judgment remedy is appropriate. *Kelly*, 868 F.3d at 282 (citing *Reifer*, 751 F.3d at 144-45). These factors are:

1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
2) the convenience of the parties;
3) the public interest in settlement of the uncertainty of obligation;
4) the availability and relative convenience of other remedies;
5) a general policy of restraint when the same issues are pending in a state court;
6) avoidance of duplicative litigation;
7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and
8) (in the insurance context) an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer*, 751 F.3d at 146.

If the Court finds an absence of a parallel proceeding, the Court's *Reifer* factor analysis specifically considers whether the remaining factors are sufficiently "good reasons" to "override the presumption in favor of jurisdiction." *Homesite*, 2017 U.S. Dist. LEXIS 184990 at *8.

Here, both the parallel proceeding and *Reifer* factor analysis support the Court's exercise of jurisdiction in the declaratory judgment action. First, there is no parallel state proceeding.

6

Hanover is not a party to the Underlying Action, as the action is brought by Boruch against only Lynch. ECF No. 1-7 at 3. Additionally, the Underlying Action does not present any dispute over insurance coverage. *See* ECF No. 1-7. The Underlying Action features solely state tort claims, the resolution of which will not resolve the issue of Hanover's obligations to Lynch. *Id.* As there is no substantial similarity in the parties nor issues involved between the two actions, the Court has no difficulty in determining that the Underlying Action is not a parallel state proceeding.

Second, the *Reifer* factors do not outweigh the presumption in favor of exercising jurisdiction that results from the absence of a parallel state proceeding. The first factor favors the Court's exercise of jurisdiction, as a declaratory judgment would resolve the uncertainty that prompted Hanover to file the declaratory judgment action. *Kelly*, 868 F.3d at 288 (holding that declaratory relief would "unquestionably clarify and settle the dispute regarding [the insurer's] obligations under the insurance policy."). The second factor also weighs in favor of the Court's exercise of jurisdiction, as Hanover—the only out-of-state party—chose to file this declaratory action in Lynch's federal district of residence. ECF No. 1 ¶¶ 3-4; *see Zurich*, 644 F. Supp. 3d at 137 (finding no inconvenience to the parties in having the matter adjudicated in the federal forum when the insurer chose the federal forum and the insured resided within the federal district).

The third factor is neutral, as the only public interest at stake is the "usual interest in fair adjudication," which the Court is equipped to address. *E.g.*, *Ohio Sec. Ins. Co. v. Pryer*, No. 24-4485, 2026 U.S. Dist. LEXIS 59938, at *11 (E.D. Pa. Mar. 23, 2026).

The fourth factor weighs in favor of exercising jurisdiction, as resolving the action here is the most convenient and efficient remedy. *See Zurich*, 644 F. Supp. 3d at 137 (holding that requiring the insurer to file a new action in state court would be "more expensive, less convenient, and less efficient" than having the matter resolved "here and now."). Hanover is not a party to the

Underlying Action. *See* ECF No. 1-7. Requiring Hanover to seek declaratory relief in state court would require Hanover to file a new action.

The fifth, sixth, seventh, and eighth factors are neutral. With respect to the fifth and sixth factors, there is no pending parallel state court action and Hanover's obligation to Lynch under the Policy is not a pending matter in state court. *See Kelly*, 868 F.3d at 289 (holding that the absence of a parallel proceeding renders both the general policy of restraint and the concern of duplicative litigation nonapplicable). With respect to the seventh factor, the fact that Hanover initiated the action in this federal forum, combined with the lack of corresponding state court action, renders any *res judicata* concerns moot. *Homesite*, 2017 U.S. Dist. LEXIS 184990 at *9 (finding no concerns of *res judicata* when there is an absence of parallel state court proceedings, the action originated in a federal forum, and no declaratory relief action filed in state court). Finally, with respect to the eighth factor, Hanover is neither a party to the Underlying Action, nor do the alleged facts present any inherent conflict of interest that is unique to the federal forum. *See Ohio Sec. Ins. Co.*, 2026 U.S. Dist. LEXIS 59938 at *11 (finding that, in an insurer obligation dispute that originated in the federal forum, any potential conflict of interest "would exist regardless of the forum.").

## V.       Default Judgment

Before considering the merits of a default judgment action, the Court must first find that: 1) the Court has proper jurisdiction; 2) the defendant was properly served; and 3) the plaintiff establishes a legitimate cause of action. *Zurich*, 644 F. Supp. 3d at 132 (E.D. Pa. 2022).

Here, Hanover fails to establish a legitimate cause of action. A party in default admits only well-pleaded factual allegations. *See SEIU Union Local 32BJ, Dist. 36 v. Shamrockclean, Inc.*, 325

F. Supp. 3d 631, 635 (E.D. Pa. 2018) ("'[A] party in default does not admit mere conclusions of law.'") (quoting *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Lynch does not admit Hanover's legal conclusion that the Policy bars coverage. On the current record, Hanover fails to establish this conclusion. The Court will therefore deny Hanover's motion without prejudice and grant Hanover leave to amend.

### 1.     The Court Has Proper Jurisdiction.

The Court has general personal jurisdiction over Lynch because Lynch is domiciled in Pennsylvania. ECF No. 1 ¶ 4, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general [personal] jurisdiction is the individual's domicile[.]").

As discussed above, the Court has subject matter jurisdiction under 28 U.S.C § 1332.

### 2.     Hanover Properly Served Process to Lynch.

Service upon an individual within a judicial district of the United States may be effected by "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A). Hanover filed an affidavit of service showing that a process server personally served a copy of the summons and the complaint to Lynch "in hand" at his residence. ECF No. 9. Therefore, Hanover appears to have properly served Lynch.

### 3.     Hanover Fails to Establish a Legitimate Cause of Action.

Hanover seeks default judgment for its declaratory action, seeking no duty to defend or indemnify Lynch for the Underlying Action. *See* ECF No. 1 at 10-11. Before granting a default judgment, the Court must "first ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *SEIU Union*

*Local 32BJ, Dist. 36*, 325 F. Supp. 3d at 635 (E.D. Pa. 2018) (internal quotations omitted). Here, the unchallenged facts do not constitute a legitimate cause of action. First, Hanover fails to establish that the Underlying Action is confined to uncovered conduct. Second, Hanover fails to meet its burden of showing that the Policy's exclusion clauses preclude its duty to defend. Finally, the issue of indemnification is premature, as the merits in the Underlying Action have yet to be decided.

      a.      <u>The Underlying Action Potentially Alleges an "Auto Accident" Under the Policy, Which Is Sufficient at This Stage to Prevent Hanover from Establishing That It Has No Duty to Defend Lynch.</u>

An insurer's duty to defend is determined solely by the potentiality of coverage. *See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010). So long as one claim in a complaint alleges an injury that is "potentially covered" under the insurance policy, an insurer is obligated to "defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) (citing *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)). The merits of the claims are irrelevant. *See Jerry's Sport Ctr., Inc.*, 2 A.3d at 541. Even if a claim is "'groundless, false, or fraudulent,'" an insurer's duty to defend is triggered so long as there exists the "possibility that the allegations implicate coverage." *Id.* (quoting *Transamerica Ins. Co.*, 533 A.2d at 1368).

To determine if a complaint is potentially covered under the insurance policy, courts first determine the scope of the insurance coverage. *Allstate Ins. Co. v. Lombardi*, 142 F. App'x 549, 550 (3d Cir. 2005) (citing *Britamco Underwriters, Inc. v. Weiner*, 636 A.2d 649, 651 (Pa. Super. 1994)). The Pennsylvania Supreme Court has defined the term "accident" within an insurance policy as "an unexpected and undesirable event occurring unintentionally, and that the key term in

10

the definition of the 'accident' is 'unexpected' which implies a degree of fortuity." *Donegal Mut. Ins. Co. v. Bauhammers*, 938 A.2d 286, 292 (Pa. 2007) (citing *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 898 (Pa. 2006)). In practice, courts applying Pennsylvania law employ this definition by creating a binary distinction between intentional and negligent acts. *See Travelers Prop. Cas. Co. of Am. v. Mericle*, 486 F. App'x 233, 237 (3d Cir. 2012). An act is accidental if it is "premised on the negligent acts of the insured." *Id.* (citing *Nationwide Mut. Fire Ins. Co. v. Pipher*, 140 F.3d 222, 225 (3d Cir. 1998)). Conversely, an act is not accidental if it is an "intentional act." *State Farm Fire & Cas. Co. v. Corry*, 324 F. Supp. 2d 666, 672 (E.D. Pa. 2004) (quoting *Gene & Harvey Builders v. Pennsylvania Mfrs.' Ass'n Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986)).

After determining the scope of the insurance policy, courts must then determine if the factual allegations in the underlying complaint implicate a possibility of coverage. *Lombardi*, 142 F. App'x at 550. To make this determination, the Court is restricted to comparing the "four corners" of the underlying complaint against the insurance policy. *See Erie Ins. Exch. v. Moore*, 228 A.3d 258, 265 (Pa. 2020) ("'Whether a claim is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint.'") (quoting *Jerry's Sport Ctr., Inc.*, 2 A.3d at 541). The factual allegations in the underlying complaint "are to be taken as true and liberally construed in favor of the insured." *Frog, Switch & Mfg. Co.*, 193 F.3d at 746 (citing *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992)). In sum, the issue of an insurer's duty to defend turns on one question: do the factual allegations in the underlying complaint, when liberally construed in favor of the insured, allow for a potential finding of negligence? *See, e.g.*, *Corry*, 324 F. Supp. 2d at 672-73 (E.D. Pa. 2004) (dismissing the insurer's declaratory judgment action because the factual allegations in the underlying complaint "sound[ed]

11

in both intentional tort and negligence," and thus constituted an accident and triggered the insurer's duty to defend).

Here, the factual allegations in the Underlying Action, when liberally construed in favor of Lynch, potentially allow for a finding that Boruch could recover under a theory of negligence. Therefore, the factual allegations potentially allege an "auto accident" under the Policy, which is sufficient at this stage to prevent Hanover from establishing that it has no duty to defend Lynch. Two factual allegations support both the intentional tort and the negligence claims: 1) Lynch's vehicle "pulled in front of [Boruch] and suddenly stopped, causing [Boruch] to strike the rear of [Lynch's] vehicle"; and 2) Lynch "placed his vehicle in reverse, causing his vehicle to come back at [Boruch.]" ECF No. 1-7 ¶¶ 5-6. In support of the negligence claim, the Underlying Action further alleges that Lynch failed to operate the vehicle "under proper and adequate control," failed to "be attentive to the conditions around him," and operated the vehicle at a "speed which was too fast for the conditions." *Id.* ¶ 16.

Hanover does not meaningfully explain why these allegations, liberally construed in Lynch's favor, cannot support a potentially covered negligence claim. While citing no bodily tort case authority, nor providing the Court with an analysis of similar allegations, Hanover circularly argues that Lynch's conduct was intentional because it could not be an accident. ECF No. 14 at 11 ("[T]he allegations set forth in the complaint clearly allege intentional conduct. It simply cannot be said that Mr. Lynch's conduct . . . was an accident[.]"). Hanover supports this contention by citing to Boruch's testimony from the criminal proceedings. *Id.* As Hanover has failed to provide meaningful briefing on why the factual allegations could not potentially constitute an auto accident, the Court will not simply adopt Hanover's conclusion that Lynch's conduct was

intentional[1]. Furthermore, the duty to defend analysis is restricted to a "four corners" comparison of the Policy and the Underlying Action. The criminal proceeding testimony is thus not relevant to the four corners duty to defend analysis.

> b. <u>Criminal Estoppel Does Not Resolve Hanover's Duty-to-Defend Argument.</u>

Hanover asserts that Lynch is estopped from arguing that Lynch's conduct was accidental because of Lynch's guilty plea to the charge of Aggravated Assault by Vehicle. *See* ECF No. 14-1 at 11. Hanover is correct that, in analyzing whether a defendant has a litigable defense in a motion for default judgment, courts hold that estoppel applies to the findings of an insured's criminal proceedings. *E.g.*, *USAA Gen. Indem. Co. v. Floyd*, Civ. A. No. 19-03820, 2019 U.S. Dist. LEXIS 203893, at *8-9 (E.D. Pa. Nov. 25, 2019) (holding that the insured's criminal conviction for aggravated assault estopped the insured from arguing that her actions were accidental). However, the present issue before the Court is not whether Lynch has a litigable defense to Hanover's Motion for Default Judgment, but whether Hanover has established a legitimate cause of action by showing that it has no duty to defend Lynch. As discussed at length above, the duty to defend analysis is restricted to the four corners approach. Hanover therefore cannot rely on criminal proceedings outside of the Underlying Action to establish that the claimed incident was not an auto accident.

> c. <u>Hanover Fails to Establish That the Policy's Exclusions Preclude Its Duty to Defend Lynch.</u>

Insurance policy exclusions are "strictly construed against the insurer and in favor of the insured," and the insurer bears the burden of demonstrating that the exclusion applies. *Nationwide*

---

[1] *See United States v. Harris*, 88 F.4th 458, 465 (3d Cir. 2023) ("But assertion is not reasoning, and saying something is so 'without question' does not make it so.")

*Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206-07 (3d Cir. 2001). As Hanover argues that the Policy's three exclusion clauses preclude its duty to defend Lynch, ECF Nos. 1 ¶ 58 & 14-1 at 3, Hanover bears the burden of establishing that the exclusions apply. On the current record, Hanover fails to meet this burden.

    d.  <u>Hanover Fails to Establish That the Policy's Intentional Exclusion Clause Precludes Its Duty to Defend Lynch.</u>

Pennsylvania courts interpret intentional harm exclusion clauses using a "subjective intent standard." *Titan Indem. Co. v. Cameron*, 77 F. App'x 91, 95 (3d Cir. 2003). Under this standard, the alleged harm is excluded from coverage only if the insured intended to cause harm "of the same general type as that which did occur." *Id.* (citing *United Services Auto. Asso v. Elitzky*, 517 A.2d 982, 987-88 (Pa. Super. Ct. 1986)); *Wiley v. State Farm Fire & Cas. Co.*, 995 F.2d 457, 460 (3d Cir. 1993) ("[I]t is not sufficient that the insured intended his actions; rather . . . the insured must have specifically intended to cause harm.") (citing *Elitzky*, 517 A.2d at 987). When interpreting these exclusion clauses, Pennsylvania courts adhere to a guiding interpretive principle: "provisions of an insurance policy [should] be construed in favor of maximum coverage for the insured[.]" *Zenith Ins. Co. v. Newell*, 527 F. Supp. 3d 778, 788 (E.D. Pa. 2021).

Typically, courts leverage the outcome of the accident analysis to conclude that the intentional exclusion clause also precludes an insurer's duty to defend. *See, e.g.*, *Kocher's Water Pumps & Tanks, Inc. v. Selective Ins. Co. of the Se.*, Civ. No. 5:25-cv-06959, 2026 U.S. Dist. LEXIS 140094, at *9-11 (E.D. Pa. June 24, 2026) (finding that, because the allegations did not constitute an accident, coverage was also precluded under the intentional harm exclusion clause); *see also Nationwide Ins. Co. v. Schiavo*, Civ. A. No. 25-650, 2025 U.S. Dist. LEXIS 165246, at *10-11 (E.D. Pa. Aug. 26, 2025), *appeal docketed*, No. 25-2875 (3d Cir. Sep. 25, 2025) (finding

14

that allegations of intentional conduct did not constitute an accident, and were thus further precluded from coverage under the intentional harm clause).

Conversely, when courts find that the intentional injury exclusion clause does not terminate an insurer's duty to defend, it is because the insurer has failed to show that the factual allegations establish the insured's subjective intent. *See, e.g.*, *State Farm Fire & Cas. Co. v. Criniti*, Civ. A. No. 02-8000, 2003 U.S. Dist. LEXIS 9750, at *10 (E.D. Pa. May 1, 2003). For example, in *Criniti*, the court held that the insurer failed to meet its burden of showing that the intentional exclusion clause applied. *Id.* The factual allegations in the underlying complaint alleged that the insured was intoxicated. *Id.* at *8. The court reasoned that, though the insured "could be found to have formed a subjective intent to harm [the victim] notwithstanding his intoxicated state," the insurer had failed to make this showing. *Id.* Specifically, the court emphasized that the insurer "presented no evidence to show subjective intent," nor did it "cite[] to any authority which would support such a finding as a matter of law based on the facts as alleged in the underlying complaint." *Id.*

On the current record, Hanover has failed to meet its burden of showing that the Policy's intentional harm exclusion clause precludes its duty to defend Lynch. As discussed at length in the accident analysis, Hanover fails to show that the factual allegations in the Underlying Action conclusively establish that Lynch's actions were intentional and not accidental. Thus, for Hanover to meet its burden, Hanover needs to make additional arguments to establish Lynch's subjective intent.

Hanover fails to make these arguments. Hanover does not present evidence of Lynch's subjective intent to cause bodily harm, nor does Hanover reference any authority to support this finding based on the factual allegations in the Underlying Action. *See* ECF Nos. 1 and 14-1. Rather, Hanover argues that "the same reasons" that preclude the finding of an accident require a finding

15

that the intentional acts exclusion does not apply. ECF No. 14-1 at 12. Hanover cites no authority in support of this claim. *Id.* Given Hanover's failure to argue why the factual allegations establish Lynch's subjective intent, and this District's focus on ensuring "maximum coverage for the insured," the Court finds that, based on the current record, Hanover has failed to meet its burden of showing that the intentional exclusion clause applies.

e.       Hanover Fails to Establish That the Policy's "Willful and Malicious" Exclusion Clause Precludes Its Duty to Defend Lynch.

To interpret "willful and malicious" exclusion clauses, the Court uses the same "subjective intent" standard used to interpret intentional harm exclusion clauses. *See, e.g.*, *State Farm Fire & Cas. Co. v. Dunlavey*, 197 F. Supp. 2d 183, 186 (E.D. Pa. 2001) (characterizing an exclusion clause that denied coverage for bodily injury resulting from the "willful or malicious acts of an insured" as an "intended harm exclusionary clause").

Hanover has failed to meet its burden of showing that the willful and malicious exclusion clause precludes its duty to defend Lynch. First, for the reasons discussed above, Hanover has not shown that Lynch had the subjective intent to cause Boruch's bodily injury. Since the "willful and malicious" exclusion clause is evaluated using the same subjective intent standard, Hanover has thus failed to show that the "willful and malicious" exclusion clause applies. Second, though Hanover requests declaratory judgment that the "willful and malicious" exclusion clause specifically precludes coverage, ECF No. 1 at 11, Hanover's Motion for Default Judgment discusses only the intentional harm exclusion clause. *See* ECF No. 14-1 at 12. Were Hanover to provide the Court with briefing on why the "willful and malicious" exclusion clause should apply, the Court could evaluate this argument. However, Hanover has provided no such argument and therefore fails to meet its burden.

16

f.      Hanover Fails to Establish That the Policy's "Criminal Acts" Exclusion Clause Precludes Its Duty to Defend Lynch.

When determining whether a criminal act exclusion terminates an insurer's duty to defend, courts applying Pennsylvania law maintain a strict adherence to the four corners rule and refuse to consider extrinsic evidence. *Moore*, 228 A.3d at 261 n.2 (rejecting the lower court's reliance on "additional facts" outside of the underlying complaint to determine that the insurer had no duty to defend under the criminal exclusion clause). Courts applying Pennsylvania law have held that criminal act exclusions apply where the factual allegations in the underlying complaint establish conduct that constitutes a criminal offense, either by alleging a criminal conviction or by independently describing criminal conduct. *See, e.g.*, *Allstate Ins. Co. v. Ervin*, Civ. A. No. 05-02800, 2006 U.S. Dist. LEXIS 56802, at *9 (E.D. Pa. Aug. 14, 2006) (holding that the criminal act exclusion applied because the underlying complaint alleged that the insureds were criminally convicted of simple assault); *see also Schiavo*, 2025 U.S. Dist. LEXIS 165246 at *12 (finding that the factual allegations in the underlying complaint described unlawful hazing in violation of the state criminal code, thus precluding the insurer from its duty to defend under the insurance policy's criminal acts exclusion).

Hanover has not shown that either of these circumstances exists here. First, the Underlying Action itself does not allege Lynch's criminal conviction, *see* ECF No. 1-7, and Hanover does not explain why the Court should disregard Pennsylvania's long-standing four corners rule to establish Lynch's criminal conduct. Hanover argues that Lynch's conduct "arose out of a criminal act," and thus triggers the criminal act exclusion under the Policy. ECF No. 1 ¶¶ 57-58. To establish that Lynch's conduct was criminal, Hanover cites to Lynch's guilty plea. *Id.* ¶ 22. As discussed at length above, the duty to defend analysis is restricted to the four corners approach. Hanover provides no

17

argument for why the Court should look outside the Underlying Action to establish Lynch's criminal conduct.

Second, Hanover does not explain whether the factual allegations in the Underlying Action independently describe criminal conduct outside the scope of the criminal exclusion clause's "traffic violations" exception. *See* ECF No. 1-3 at 52 ("[Hanover] do[es] not provide Liability coverage for . . . 'bodily injury' or 'property damage' arising out of a criminal act, *except for traffic violations*.") (emphasis added). Lynch pled guilty to the charge of Aggravated Assault by Vehicle, in violation of 75 Pa.C.S. § 3732.1[2] of Pennsylvania's Vehicle Code. ECF No. 1-5 2:2-6, ECF No. 1-6 2:2-7. To establish that the criminal act exclusion precludes Hanover's duty to defend Lynch, Hanover must explain why Lynch's offense is not covered under the Policy's traffic violations exception. Like the *Schiavo* underlying complaint, it is possible that the factual allegations in the Underlying Action may independently describe a non-traffic criminal offense, such as aggravated assault. However, it is Hanover's burden to make this argument, and the Court will not consider the issue without meaningful briefing[3].

### g.    The Issue of Hanover's Duty to Indemnify is Premature.

Unlike the duty to defend, an insurer's duty to indemnify is triggered only when a court determines that the insurance policy actually—rather than potentially—covers the claimed incident. *Britamco Underwriters, Inc. v. Stokes*, 881 F. Supp. 196, 198 (E.D. Pa. 2005) ("[T]he duty to indemnify arises only when the insured is determined to be liable for damages within the

---

[2] Improperly referenced in Hanover's Motion for Default Judgment as 18 Pa. Code § 2701. *See* ECF No. 14-1 at 11.

[3] *See Lee v. Park*, 720 F. App'x 663, 666 (3d Cir. 2017) ("First, it is the responsibility of neither the District Court nor this Court to make the parties' arguments for them; therefore, we will not engage in a freewheeling investigation into New Jersey state law without meaningful briefing on the subject.").

coverage of the policy.") (citing *Employers Reinsurance Corp. v. Sarris*, 746 F. Supp. 560, 566-68 (E.D. Pa. 1990)). This focus on actuality of coverage means that insurers may introduce extrinsic evidence to argue "the applicability of the subject exclusion." *Regis Ins. Co. v. All Am. Rathskeller, Inc.*, 976 A.2d 1157, 1161 (Pa. Super. Ct. 2009).

The Court generally refrains from determining an insurer's duty to indemnify when the insured's liability has not yet been determined in the underlying action. *See Am. Nat'l Lloyds Ins. Co. v. Alexis*, Civ. A. No. 23-130, 2025 U.S. Dist. LEXIS 53338, at *13 (E.D. Pa. Mar. 24, 2025) ("The Court declines to make a determination on [the] duty to indemnify as doing so would be premature. If warranted, [the insurer] may refile its case once the underlying lawsuit is resolved."); *see also Corry*, 324 F. Supp. 2d at 674 ("[The Court] will stay this action with respect to the question of indemnification, and permit the [state court] to render a decision on the underlying facts of this dispute.").

As the Underlying Action is still pending in state court, the Court declines to rule on Hanover's duty to indemnify Lynch. Hanover may renew its request for declaratory relief on indemnity once the Underlying Action is resolved.

## VI.      Conclusion

For the foregoing reasons, Hanover's Motion for Default Judgment is denied without prejudice. On the current record, Hanover has not met its burden of establishing that it has no duty to defend Lynch. The Court recognizes that Hanover may be able to cure this deficiency with supplemental briefing.

The Court declines to make a determination on Hanover's duty to indemnify Lynch, as doing so would be premature. Hanover may renew its request for declaratory relief on indemnity once the Underlying Action is resolved.